# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

DONAVAN McINTOSH,

    Plaintiff

v.

CITY OF NORTH LAS VEGAS, et al.,

    Defendants

Case No.: 2:21-cv-01505-APG-EJY

**Order Granting in Part Motion for Summary Judgment**

[ECF No. 40]

Donavan McIntosh, who is a black police officer at the North Las Vegas Police Department, sues the City of North Las Vegas (CNLV) and current or former department officials Pamela Ojeda, Clinton Ryan, and Alejandro Rodriguez, alleging that they violated state and federal antidiscrimination laws and 42 U.S.C. § 1983 by subjecting him to race discrimination, a racially hostile work environment, and retaliation. The defendants move for summary judgment. ECF No. 40. The parties are familiar with the facts, so I repeat them only as necessary to resolve the pending motion. I grant the defendants' motion in part.

## I. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The

burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact and that it could satisfy its burden at trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. County of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

## 1. COUNT ONE: RACE DISCRIMINATION

McIntosh asserts that CNLV violated Nevada Revised Statutes (NRS) § 613.330 and Title VII of the Civil Rights Act of 1964 by discriminating against him because of his race. CNLV argues that McIntosh fails to raise a genuine dispute that he was subjected to adverse employment actions or that similarly situated individuals were treated more favorably. ECF No. 40 at 18-20. McIntosh responds that while he worked as the recruiter for the CNLV police department, the defendants intentionally made it difficult for him to succeed because he is black. He claims he was discriminatorily transferred from his job in recruiting, removed from the police department's honor guard, and denied subsequent transfers or promotions.

Title VII forbids an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1). At summary judgment, I apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[1] *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008). Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Hawn v.*

---

[1] McIntosh contends burden-shifting does not apply because this may be a mixed motive case. ECF No. 49 at 26. But "*McDonnell Douglas* and 'mixed-motive' are not two opposing types of cases. Rather, they are separate inquiries that occur at separate stages of the litigation." *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 857 (9th Cir. 2002) (en banc).

1    *Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010).  The evidence needed to establish a

2    prima facie case "is minimal and does not even need to rise to the level of a preponderance of the

3    evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).  A prima facie case

4    creates the presumption that the defendant violated Title VII. *See Cornwell v. Electra Cent.*

5    *Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).  The burden then shifts to the defendant to

6    articulate a legitimate, nondiscriminatory reason for the challenged action. *Hawn*, 615 F.3d at

7    1155.  If the defendant meets this burden, the plaintiff must raise a triable issue of fact as to

8    whether the given reasons are pretext. *Id.*

9           To establish a prima facie case of race discrimination under Title VII, McIntosh must

10   offer proof: (1) that he belongs to a protected class under Title VII; (2) that he was qualified for

11   his position; (3) that he suffered an adverse employment action; and (4) that CNLV treated

12   McIntosh differently than a similarly situated employee who does not belong to the same

13   protected class. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).  Courts apply the

14   same analysis to discrimination claims under NRS § 613.330. *Stewart v. SBE Ent. Grp., LLC*,

15   239 F. Supp. 3d 1235, 1246 n.61 (D. Nev. 2017).

16          CNLV concedes that McIntosh is African American, is a member of a protected class,

17   and was qualified for his recruiting and honor guard positions. ECF No. 40 at 17.  I thus focus on

18   whether he offers evidence that he suffered an adverse employment action and that he was

19   treated differently than similarly situated individuals.

20          In the complaint, McIntosh asserts that he was subjected to four[2] adverse employment

21   actions: (1) a lack of resources during his stint as recruiter; (2) his removal from the recruiter

22

---

23   [2] Much of McIntosh's opposition brief merely recites the factual allegations in the complaint
     with citations to the record added, so it is difficult to determine what actions he contends were
     adverse employment actions. *See* ECF No. 49 at 1-19.  While Local Rule 56-1 requires McIntosh

position; (3) his removal from the police department's honor guard; and (4) the rejection of his applications for transfers to special assignments. ECF No. 1 at 15, 21.  CNLV argues that none of these constitutes an adverse employment action because McIntosh's recruiting position was a temporary assignment, honor guard service is strictly voluntary, and McIntosh's rejected reassignment applications were for temporary positions, not promotions. ECF No. 40 at 18-19. McIntosh responds that he has raised a genuine issue that his race was at least a motivating factor in his treatment. ECF No. 49 at 26.

An adverse employment action "materially affects the compensation, terms, conditions, or privileges of employment." *Davis*, 520 F.3d at 1089 (cleaned up).  I construe the term "adverse employment action" broadly, and it includes an action that negatively affects an employee's compensation. *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004).  Other courts have held that an officer's reassignment from detective to patrol with a five percent pay disparity is sufficient to raise a genuine issue. *See Fitzgerald v. El Dorado County*, 94 F. Supp. 3d 1155, 1171-72 (E.D. Cal. 2015) (reassignment with pay decrease could constitute adverse employment action under the Age Discrimination in Employment Act); *Mustafa v. Clark Cnty. School Dist.*, 157 F.3d 1169, 1180 n.11 (9th Cir. 1998) (noting that the

---

to include "a concise statement setting forth each fact material to the disposition of the motion," he must explain how those facts are material to the issues in this case.  In his law analysis section, he states that "there are several" adverse employment actions before pointing only to his removal from the honor guard. *Id.* at 27.  "Judges are not like pigs, hunting for truffles buried in briefs." *Christian Legal Soc'y. Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010) (quotation omitted).  Giving a fair reading to his response brief, I construe it to point to four adverse employment actions.  To the extent McIntosh argues other actions constitute adverse employment actions, such as when he was targeted for bodycam review or was required to wear his police uniform, CNLV is entitled to summary judgment because McIntosh fails to point to evidence that those actions materially affected his conditions of employment or that he was treated differently than similarly situated employees.

Ninth Circuit applies the same standard to Title VII and age discrimination disparate treatment claims).

If McIntosh offers evidence that he was subjected to an adverse employment action, he must then point to similarly situated individuals who did not experience those actions.  He must identify employees outside his race "who were similarly situated to [him] in all material respects but who were given preferential treatment; they must have similar jobs and display similar conduct." *Campbell v. Haw. Dep't of Educ.*, 892 F.3d 1005, 1015 (9th Cir. 2018) (quotations omitted).

### A.  Recruiting, Special Assignments, and Honor Guard

Even if McIntosh could show that his transfer from recruiting, removal from the honor guard, and rejection from special assignments were adverse employment actions, he fails to identify any similarly situated individuals who were not subjected to those adverse employment actions.  He offers conclusory statements that non-black officers received preferential treatment with respect to those actions, but he does not identify any such employees beyond those general statements. *See* ECF No. 49-2 at 17; *Levy v. Mandalay Corp.*, No. 2:14-cv-01636-GMN-NJK, 2015 WL 3629633, at *2 (D. Nev. June 10, 2015) ("[S]imilarly situated individuals must be identified with specificity.").  Absent any proof of this element, I grant summary judgment to CNLV insofar as McIntosh alleges it discriminated against him by transferring him out of recruiting, removing him from the honor guard, or denying him other special assignments.

### B.  Denial of a Budget and Resources

McIntosh offers evidence that, during his tenure as recruiter, he was denied access to resources traditionally afforded to the position and that the lack of resources hindered his job performance. ECF Nos. 49-2 at 9; 49-7 at 8; 49-10 at 11; 49-11 at 20.  This is sufficient to meet

his burden at this stage of proffering evidence that his conditions of employment were materially affected. *See Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1125-26 (9th Cir. 2000) (unprecedented, forcible relocation of employees' laboratory was an adverse employment action because it was a "substantial interference with work facilities important to the performance of the job"); *cf. Staff v. Pall Corp.*, 233 F. Supp. 2d 516, 532 (S.D.N.Y. 2002) (failure to receive office or subordinates did not constitute adverse employment action absent evidence plaintiff could not fulfill his job responsibilities without those amenities).

McIntosh also offers evidence that CNLV gave preferential treatment to officers Djuan Muldrew and Diana Franco, who received a budget when they replaced McIntosh in recruiting. ECF No. 49-10 at 11.  While Muldrew is also black, Franco is Hispanic. ECF No. 49-12 at 21. McIntosh has therefore met his burden at this stage of offering evidence that a similarly situated employee outside of his racial group received preferential treatment and he has made out a prima facie case that CNLV violated Title VII by denying him resources when he was the department recruiter.

Because McIntosh has made out a prima facie case with respect to his treatment when he was a recruiter, the burden shifts to CNLV to offer a nondiscriminatory reason for the adverse employment action.  CNLV has not done so.  It fails to address McIntosh's lack of resources in recruiting, even though McIntosh pleaded it in his complaint. *See* ECF No. 1 at 15.  I thus deny CNLV's motion on this portion of McIntosh's claim.  McIntosh raises a genuine issue of whether CNLV discriminated against him by denying him a budget and other resources during his tenure as recruiter.

////

////

6

1       2. COUNT TWO: HOSTILE WORK ENVIRONMENT

2       McIntosh also brings a hostile work environment claim against the defendants under 42

3 U.S.C. § 1981. The Ninth Circuit previously construed § 1981 to provide an independent cause

4 of action against state actors. *See, e.g.*, *Fed'n of African American Contractors v. City of*

5 *Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996). But it very recently issued an *en banc* opinion

6 abrogating that precedent and holding that § 1981 creates federal rights but does not provide an

7 express or implied cause of action against state actors. *Yoshikawa v. Seguirant*, No. 21-15970,

8 2023 WL 4722982, at *2 (9th Cir. July 25, 2023) (en banc). It further held that 42 U.S.C. § 1983

9 is a plaintiff's sole cause of action for violations of § 1981 by state actors. *Id.* at *4. The

10 defendants in this case are state actors, so I dismiss count two because there is no cognizable

11 cause of action against them under § 1981.

12       Even if McIntosh could amend to add a § 1983 cause of action for this claim, amendment

13 would be futile because I would grant summary judgment to the defendants. Courts apply the

14 same standard to hostile work environment claims under Title VII and § 1981. *Manatt v. Bank of*

15 *Am., NA*, 339 F.3d 792, 797 (9th Cir. 2003). To succeed on his hostile work environment claim,

16 McIntosh must prove: "(1) that he was subjected to verbal or physical conduct of a racial nature;

17 (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or

18 pervasive to alter the condition of the plaintiff's employment and create an abusive work

19 environment." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 686 (9th Cir. 2017)

20 (simplified). Whether an environment is sufficiently hostile or abusive depends on all the

21 circumstances, including the frequency and severity of the conduct. *Faragher v. City of Boca*

22 *Raton*, 524 U.S. 775, 787-88 (1998). "Simple teasing, offhand comments, and isolated incidents

23 (unless extremely serious) will not amount to discriminatory changes in the terms and conditions

of employment." *Id.* (simplified).  The work environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* at 787.

The defendants argue McIntosh has failed to produce evidence that he experienced verbal or physical conduct of a racial nature or that the conduct was sufficiently pervasive.  McIntosh's response is not entirely clear with respect to his hostile work environment claim, but he argues that the record shows several instances of "retaliatory harassment," which I take to also refer to a hostile work environment. ECF No. 49 at 24-25; *see Christian v. Umpqua Bank*, 984 F.3d 801, 809 (9th Cir. 2020) (plaintiff must show harassment to establish hostile work environment claim).

Even viewing the facts in the light most favorable to McIntosh, he fails to raise a genuine issue of material fact on this claim.  His declaration contains mostly conclusory statements that he was discriminated against because of his race, but he fails to adduce any direct or circumstantial evidence of racially motivated conduct that a reasonable jury could determine created a hostile work environment. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) ("To defeat summary judgment, [McIntosh] must respond with more than mere hearsay and legal conclusions." (quotation omitted)).  The only evidence McIntosh identifies to support his hostile work environment claim is his and other witnesses' subjective beliefs, some occasions where he contends he was mistreated or treated differently than other employees, and one racially charged but isolated comment made by a coworker. ECF Nos. 40-1 at 14-15, 22-24; 49-2; 49-4 at 34-35; 49-5 at 17.  This is insufficient for McIntosh to sustain his burden of raising a genuine dispute that he experienced severe and pervasive conduct of a racial nature. *See Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 648 (9th Cir. 2021) (a single incident must be "extremely

severe" to support a hostile work environment claim (quotation omitted)); *Diaz v. Connolly*, 332 F. App'x 385, 387 (9th Cir. 2009) (single racist comment insufficient to sustain hostile work environment claim, "particularly as [plaintiff] offered no other direct or indirect evidence of racial animus").  McIntosh does not point to any specific, articulable evidence that he experienced a hostile work environment, so I grant the defendants' motion on count two.

### 3.  COUNT THREE: VIOLATION OF FEDERAL RIGHTS

McIntosh also brings a claim under 42 U.S.C. § 1983, alleging that the defendants violated his right to equal contractual relations under 42 U.S.C. § 1981. ECF No. 1 at 23-24.  He also argues in his response brief that the defendants violated his property interest in his job. ECF No. 49 at 29.  To succeed on his § 1983 claim against the individual defendants, McIntosh must show: "(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).  Because the individual defendants do not dispute that they were acting under color of state law, I analyze only whether they violated McIntosh's federal rights.  To succeed against CNLV, McIntosh must also show: "(1) that a [CNLV] employee was acting pursuant to an expressly adopted official policy; (2) that a [CNLV] employee was acting pursuant to a longstanding practice or custom; or (3) that a [CNLV] employee was acting as a final policymaker." [3] *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004) (quotation omitted).

/ / / /

/ / / /

---

[3] These claims are often referred to as *Monell* claims. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

### A.  § 1981[4]

#### i.  Individual defendants

Section 1981, like Title VII, "express[es] the federal policy against discriminatory employment practices." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 470 (1975) (Marshall, J., concurring in part).  It confers equal rights in "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," including the contractual relationship between employer and employee. 42 U.S.C. § 1981(b); *Surrell*, 518 F.3d at 1103.  Section 1981's language regarding contractual rights bars intentional employment discrimination. *Surrell*, 518 F.3d at 1103.

I analyze this claim using the same standard that applies to a Title VII disparate treatment claim. *Id.*  Thus, I analyze whether McIntosh has raised a genuine dispute that "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Martin v. Clark County*, No. 2:19-cv-01623-APG-DJA, 2020 WL 5518608, at *3 (D. Nev. Sept. 14, 2020) (quotation omitted).  My analysis of McIntosh's disparate treatment claim in count one applies to his § 1981 claim and I incorporate it here.  There is a genuine issue of whether the individual defendants[5] violated McIntosh's federal rights by denying him access to resources and a budget when he worked as a recruiter, but he has not raised a genuine issue under any other theory of disparate treatment.

---

[4] Unlike his other § 1981 claims, McIntosh relies on § 1983 as his cause of action for this alleged § 1981 violation.  This claim thus complies with *Yoshikawa*.

[5] The individual defendants do not argue that McIntosh has failed to identify which of them personally participated in the deprivation of his rights, so I do not address that issue. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (personal participation required under § 1983).

> *ii.  CNLV*

McIntosh argues that CNLV is subject to *Monell* liability for the individual defendants' violations of § 1981 due to a longstanding custom or practice of race discrimination, but he does not argue that the individual defendants acted according to official policy or as final policymakers.  While he raises a genuine issue of whether the individual defendants are liable under § 1983 for violating § 1981, he fails to offer any evidence that the individual defendants were acting according to a policy "so permanent and well settled as to constitute a custom or usage with the force of law." *Gordon v. County of Orange*, 6 F.4th 961, 974 (9th Cir. 2021) (quotation omitted).  "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* (quotation omitted).

Although some witnesses corroborated examples of racial discrimination and harassment decades earlier in the CNLV Police Department, none of the witnesses articulated examples of a consistent, ongoing custom. *See, e.g.*, ECF Nos. 49-4 at 15, 18; 49-5 at 17.  McIntosh's declaration and Lieutenant Leonard Cardinale's testimony mostly raise subjective assertions of a racist culture of discrimination, although Cardinale offered at least one example of possibly racist conduct when Ojeda, without any explanation, requested that he split up a two-man unit consisting of McIntosh and another black officer. *See, e.g.*, ECF Nos. 49-2; 49-4 at 9, 13-14, 33-35.  This evidence is not enough for McIntosh to meet his burden at trial of proving he was discriminated against due to a department custom. *See Opara v. Yellen*, 57 F.4th 709, 728-29 (9th Cir. 2023) ("mere conclusory allegations" are insufficient to raise genuine issue (quotation

omitted)).  I grant CNLV's motion for summary judgment on this theory of McIntosh's § 1983 claim.

### B. Property Interest

In his response brief, McIntosh also argues that the defendants violated his property or liberty interest in his job and the right to seek promotions. ECF No. 49 at 29.  The defendants reply they are entitled to summary judgment on this issue because McIntosh remains employed with the police department and has no property interest in receiving special assignments. ECF No. 58 at 10.

"The Fourteenth Amendment protects individuals against the deprivation of liberty or property by the government without due process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).  That protection of liberty and property "extend[s] well beyond actual ownership of real estate, chattels, or money." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571-72 (1972).  Property interests stem from an independent source, such as state law, and public employees may have a property interest in their job. *Id.* at 577; *Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 331 (9th Cir. 1995).  But a person has a property interest only where there is "a legitimate claim of entitlement," not merely an abstract need or desire. *Roth*, 408 U.S. at 577.

Even if I considered this argument, which was raised for the first time in McIntosh's response brief, the defendants are entitled to summary judgment.  Although McIntosh may maintain a property interest in his job as a police officer, he points to no independent source of authority showing that he has a property interest in receiving a promotion. *See Nunez v. City of Los Angeles*, 147 F.3d 867, 871-72 (9th Cir. 1998) (explaining that, under California law, police officer plaintiffs did not have property interest in promotions).  Moreover, under the parties'

1  collective bargaining agreement, "ADP assignments are not promotional and, therefore, no

2  property rights exist." ECF No. 40-2 at 10.  Several witnesses testified that special assignments

3  are temporary and there is evidence that officers regularly rotate back to patrol at the discretion

4  of the police chief. ECF Nos. 49-5 at 6; 49-9 at 7–8; 49-12 at 8, 10, 21-22.  McIntosh's removal

5  from a temporary special assignment, while still retaining his job, is insufficient to raise a

6  genuine issue of whether the defendants violated his property interest.  I thus grant summary

7  judgment to the individual defendants on this theory of McIntosh's § 1983 claim.  And CNLV is

8  entitled to summary judgment because "absent any constitutional violations by the individual

9  defendants, there can be no *Monell* liability." *Palmerin v. Riverside*, 794 F.2d 1409, 1414 (9th

10  Cir. 1986).

11    4.  COUNT FOUR: RETALIATION UNDER § 1981

12    McIntosh brings a retaliation claim against the defendants under 42 U.S.C. § 1981. ECF

13  No. 1 at 24-25.  As with count two, he cannot proceed with this claim because there is no cause

14  of action against the defendants under § 1981.  I thus dismiss count four.  However, for the

15  reasons discussed in the next section, it appears there may be a genuine issue of whether the

16  defendants retaliated against McIntosh by removing him from the honor guard.  The defendants

17  will not suffer any prejudice if I grant McIntosh leave to amend his complaint to add a § 1983

18  retaliation claim because there would be no need for additional discovery and the new § 1983

19  claim would be functionally identical to the § 1981 retaliation claim in count four. *See Surrell*,

20  518 F.3d at 1103, 1107-08 (evaluating § 1981 retaliation under the same standard as a Title VII

21  retaliation claim).  I may grant leave to amend a complaint "when justice so requires." Fed. R.

22  Civ. P. 15(a)(2).  It would be unfair to McIntosh to deny him a valid claim merely because of a

23  procedural defect caused by an intervening *en banc* opinion by the Ninth Circuit.  I thus grant

13

him leave to amend his complaint to add a § 1983 claim that the defendants violated his § 1981 rights by retaliating against him.  McIntosh must not add any other claim or theory to his complaint.  If he chooses to amend, he must do so by August 25, 2023.

### 5.  COUNT FIVE: RETALIATION UNDER TITLE VII AND NRS § 613.340

McIntosh claims CNLV violated Title VII and NRS § 613.340 by retaliating against him. ECF No. 1 at 25-26.  Title VII prohibits employers from discriminating against employees in retaliation for opposing "any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).  I evaluate NRS § 613.340 retaliation claims under the same legal standard as Title VII retaliation claims. *See Sternquist v. Humble Hearts LLC*, Case No. 2:19-cv-00448-JAD-BNW, 2021 WL 3134902, at *3 (D. Nev. July 23, 2021).

The *McDonnell Douglas* burden-shifting framework applies to retaliation claims. *McGinest v. GTE Serv. Corp*., 360 F.3d 1103, 1124 (9th Cir. 2004).  McIntosh may make a prima facie retaliation case by showing (1) he engaged in protected activity; (2) he suffered an adverse action; and (3) "there was a causal link between the two." *MacIntyre v. Carroll Coll.*, 48 F.4th 950, 954 (9th Cir. 2022).  If McIntosh makes a prima facie showing, the burden shifts to the defendants to articulate a legitimate, non-retaliatory reason for the challenged action. *Id.*  If they do so, McIntosh must "show that the reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* (quotation omitted).

#### A.  Protected Activity

McIntosh claims that he opposed CNLV's racial discrimination when he contacted then-Assemblywoman and friend Dina Neal to discuss concerns about his work environment.  CNLV

14

1    argues that McIntosh's communication with Neal does not constitute protected activity because

2    the communication was in her personal capacity and she has no official connection to CNLV.

3         "An employee need not establish that the opposed conduct in fact violated [Title VII] in

4    order to establish a valid claim of retaliation." *Learned v. City of Bellevue*, 860 F.2d 928, 932

5    (9th Cir. 1988).  And an employee's opposition to his employer's conduct does not need to be

6    active or consistent to constitute protected activity. *Crawford v. Metro. Gov't of Nashville and*

7    *Davidson County, Tenn.*, 555 U.S. 271, 277-79 (2009).  "When an employee communicates to

8    [his] employer a belief that the employer has engaged in a form of employment discrimination,

9    that communication virtually always constitutes the employee's opposition to the activity." *Id.* at

10   276 (cleaned up).

11        Viewing the record in the light most favorable to McIntosh, his communications to Neal

12   could constitute protected activity.  McIntosh opposed conduct he believed to be unlawful when

13   he contacted Neal.  He told Neal in the fall of 2018 "about the discriminatory and harassing

14   treatment [he] was suffering at work." ECF No. 49-2 at 11.  In January or February of 2019, Neal

15   approached the CNLV city manager and defendant Ojeda, then the chief of police, on

16   McIntosh's behalf. *Id.* at 11; ECF No. 49-11 at 44.  She also participated in a legislative hearing

17   on March 7, 2019 that McIntosh characterizes as critical of the CNLV police department. ECF

18   Nos. 49-2 at 12, 16-17; 49-7 at 12.  Furthermore, McIntosh was told that Ojeda was angry at him

19   for "using Dina Neal as [his] personal attack dog." ECF No. 49-2 at 17; *see also JL Beverage*

20   *Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) (at summary judgment,

21   district court may consider hearsay "so long as the underlying evidence could be offered in an

22   admissible form at trial").  The fact that Neal and McIntosh were personal friends does not

23

1  preclude a reasonable jury from finding that he participated in protected activity by contacting

2  Neal (his elected representative), who then reached out to CNLV to address his concerns.

3      CNLV offers no authority for the proposition that an employee must personally complain

4  to an employer for the complaint to receive protection from retaliation, and I find no cases

5  supporting that assertion.  The text of Title VII does not contain any requirement that an

6  employee oppose an unlawful employment practice directly to his employer. *See* 42 U.S.C.

7  § 2000e-3; *United States v. Lillard*, 935 F.3d 827, 833-34 (9th Cir. 2019) ("If the language [of a

8  statute] has a plain meaning or is unambiguous, the statutory interpretation inquiry ends there."

9  (quotation omitted)).  Moreover, courts "liberally construe" the opposition clause of Title VII.

10 *Learned*, 860 F.2d at 932.  Viewing the facts in the light most favorable to McIntosh, a

11 reasonable jury could find that his communication to Neal was protected activity.

12     McIntosh also points to evidence that, after he was informed of his removal from

13 recruiting, he complained to the police union and the CNLV city manager about what he

14 believed was harassment or retaliation by department officials. ECF No. 49-2 at 14-15.  These

15 actions could be protected activities under Title VII because they constitute opposition to

16 employment practices McIntosh believed were illegal.[6]

17

---

18 [6] Because much of McIntosh's response brief merely regurgitates his complaint with citations to the record added, it is difficult to identify which actions he argues constitute protected conduct.

19 In the portion of the filing where McIntosh discusses his retaliation claim, he merely states that he "engaged in a [sic] many protected activities chronicled in the facts above" before identifying

20 only his contact with Neal. ECF No. 49 at 21.  As I have already stated, it is not my job to find arguments buried in a brief.  Nor is it my job "to scour the record in search of a genuine issue of

21 triable fact," because I "rely on [McIntosh] to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996)

22 (quotation omitted); s*ee also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the

23 issues to the court.").  To the extent McIntosh argues other conduct was protected (like his prior complaints to human resources, his complaints about officer Aaron Larontonda, his request to speak to an outside consultant about the department's recruiting operations, his request for a

### B. Adverse Action

McIntosh argues CNLV subject him to two[7] retaliatory adverse actions: (1) reassignment from the recruiting position; and (2) his removal from the honor guard. ECF No. 49 at 22. CNLV asserts that neither action is sufficient to sustain a retaliation claim. ECF No. 40 at 28.

#### i. Removal from recruiting

I need not address whether McIntosh's removal from recruiting was an adverse employment action because, as discussed below, there is no evidence of a causal link between his removal and his protected conduct.

#### ii. Removal from the honor guard

For a Title VII retaliation claim, "an adverse employment action is adverse treatment that is reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1237 (9th Cir. 2000). The definition of an adverse employment action for a retaliation claim is broader than for a discrimination claim. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). "[T]he significance of any given act of retaliation will often depend upon the particular circumstances," and McIntosh "must show that a reasonable employee would have found the challenged action materially adverse." *Id.* at 68-69.

Viewing the evidence in the light most favorable to McIntosh, a reasonable jury could find that his removal from the honor guard was an adverse employment action. McIntosh stated

---

vehicle, or his mentioning to defendant Clinton Ryan that he lacked a recruiting budget), I grant summary judgment to the defendants because McIntosh makes no effort to explain how that conduct was protected or how that conduct was tied to an adverse employment action.

[7] He also argues that he was subjected to "retaliatory harassment." ECF No. 49 at 24-25. Like his hostile work environment claim, this claim fails because McIntosh offers insufficient evidence that any harassment he experienced was sufficiently severe or pervasive to alter the conditions of his employment. *See Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000) (quotation omitted).

that he loved being on the honor guard, that it was prestigious for him to serve, and that he did so for 19 years. ECF No. 49-2 at 16.  He also stated that his removal from the honor guard embarrassed and demoralized him. *Id.* at 16.  Lieutenant Tom Glazier confirmed that the position is prestigious and that honor guard members are motivated by passion and pride. ECF No. 49-8 at 8, 11.  Thus, a reasonable jury could find that removal from the honor guard could deter an employee in McIntosh's position from opposing unlawful employment practices.

### C. Nexus

#### i.  Removal from recruiting

McIntosh must show a causal link between his protected conduct and an adverse employment action.  At this stage, he "merely has to prove that the protected activity and the adverse action are not completely unrelated." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 869 (9th Cir. 2014) (simplified).  He can meet his burden by offering circumstantial evidence that CNLV knew he engaged in protected activity and that there was proximity in time between the protected conduct and the adverse action. *Id.*  "[E]vidence based on timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons proffered by the defendant." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000).

Even viewing the evidence in the light most favorable to McIntosh, he cannot prove a causal link between his removal from recruiting and any protected conduct.  It is undisputed that Ojeda informed McIntosh of his removal from recruiting on November 27, 2018. ECF No. 40-2 at 27.  McIntosh states that Neal spoke with Ojeda and the CNLV city manager in January or February 2019. ECF No. 49 at 21.  He points to no evidence that CNLV officials knew of his contact with Neal before 2019.  And his complaints to the city manager and police union

occurred after his removal. ECF No. 49-2 at 14-15.  He thus cannot prove any causal link

between his removal from recruiting and his protected conduct. *See Miller v. Fairchild Indus.,*

*Inc.*, 797 F.2d 727, 731 n.1 (9th Cir. 1986) (it is "the obvious conclusion" that an employer who

took an adverse employment action did not intend to retaliate where the decision was made

before it knew of the protected conduct).  I grant summary judgment to the defendants on this

theory of the retaliation claim.

## ii.  Removal from the honor guard

While McIntosh points to evidence that he complained to the city manager and the police

union about his treatment, he provides no dates for those complaints nor any other evidence from

which a reasonable jury could conclude that he was removed from the honor guard because of

those complaints.  So I grant summary judgment to CNLV on that portion of McIntosh's

retaliation claim.

However, McIntosh offers sufficient evidence of a nexus between his complaints to Neal

and his removal from the honor guard.  CNLV does not dispute that Neal contacted Ojeda in

January or February of 2019, that defendant Rodriguez requested McIntosh's removal on March

14, 2019, and that McIntosh was removed from the honor guard on March 25, 2019. ECF Nos.

40-1 at 141; 58 at 16.  Viewing the evidence in the light most favorable to McIntosh, the record

demonstrates less than a one-month gap between Neal's meeting with officials and McIntosh's

removal from the honor guard.  That temporal proximity is sufficient for a reasonable jury to

infer that CNLV removed McIntosh from the honor guard in retaliation for his opposition to

unlawful employment practices. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)

("The cases that accept mere temporal proximity between an employer's knowledge of protected

activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." (quotation omitted)).

CNLV argues that McIntosh fails to offer evidence that Rodriguez was aware of McIntosh's complaints to Assemblywoman Neal. ECF No. 58 at 17. Viewing the facts in the light most favorable to McIntosh, a reasonable jury could find that all three of the individual defendants were aware of the protected conduct. Rodriguez was McIntosh's direct supervisor in recruiting during the relevant time. ECF No. 49-2 at 8. A jury reasonably could infer that he would be informed about a legislator inquiring to the chief of police about the treatment of McIntosh. Furthermore, defendants Ojeda and Ryan signed off on McIntosh's removal from the honor guard and there is evidence that at least Ojeda was aware of Neal's concerns, given that she met with Neal. ECF No. 40-1 at 141. A jury might also infer that Ryan (then the assistant chief of the police department) was aware of Neal inquiring into the department's affairs. McIntosh has established a prima facie case of retaliation.[8]

### D. Nonretaliatory Explanation

Having stated a prima facie case, the burden shifts to the defendants to articulate a legitimate, nonretaliatory reason for the adverse employment action. *MacIntyre*, 48 F.4th at 954. The defendants claim that McIntosh was removed from the honor guard because he did not take his position seriously. According to Rodriguez's memorandum requesting the removal, McIntosh left an honor guard event early on March 13, 2019 and arrived late to an event on November 6, 2018, causing that event to start a few minutes later than scheduled. ECF No. 40-1 at 142. Tardiness and a failure to take the position seriously could be legitimate reasons to

---

[8] I would not characterize McIntosh's evidence on this issue as strong. But it is sufficient to meet his "minimal" burden. *Wallis*, 26 F.3d at 889.

1    remove McIntosh from the honor guard, so the burden shifts to McIntosh to show that the reason

2    is pretextual.

3             **E. Pretext**

4         McIntosh argues that the defendants removed him from the honor guard just one week

5    after Neal held her hearing regarding the CNLV police department. ECF No. 49 at 16.  He also

6    states in his declaration that Jake Hickman, who was an honor guard supervisor, excused his

7    early departure on March 13 because he had a doctor's appointment. ECF Nos. 49-2 at 17; 49-13

8    at 30.  Glazier (who previously led the honor guard) testified that during his tenure he had

9    dismissed only one member, and that was for alcoholism and insubordination. ECF No. 49-8 at

10    12.  While acknowledging that different honor guard supervisors could employ different

11    approaches to the job, he further testified that he had addressed issues such as tardiness or

12    missing an honor guard event and he would not consider removing a member in circumstances

13    like McIntosh's. *Id.* at 16.  He also testified that McIntosh was his "go-to guy" in the honor

14    guard and "the exact stereotypical person that you would want to represent the honor guard." *Id.*

15    at 13.  Given the close proximity between the events, McIntosh's apparently uninterrupted 19-

16    year honor guard service, McIntosh's excused leave, and Glazier's testimony, a reasonable jury

17    could conclude that the defendants' proffered reasons for removing McIntosh from the honor

18    guard are pretextual.  I thus deny the motion for summary judgment on count five insofar as

19    McIntosh alleges CNLV retaliated against him by removing him from the honor guard.

20    **II.  CONCLUSION**

21         I THEREFORE ORDER that the defendants' motion for summary judgment **(ECF No.**

22    **40) is GRANTED in part and DENIED in part**.  The remaining claims in this case are (1) the

23    disparate treatment claim against defendant City of North Las Vegas; (2) the disparate treatment

§ 1983 claim against defendants Pamela Ojeda, Clinton Ryan, and Alejandro Rodriguez; and (3) the retaliation claim against the City of North Las Vegas.

I FURTHER ORDER that plaintiff Donavan McIntosh may amend his First Amended Complaint to add a § 1983 claim against the defendants based on alleged retaliation in violation of § 1981.  If he chooses to amend, he must do so by August 25, 2023.

DATED this 28th day of July, 2023.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE